(No. 78-CC-1192–)

UNITED STATES OF AMERICA, Claimant, *v.* THE STATE OF ILLINOIS, Respondent.

*Opinion filed July 31, 1979.*

NANCY K. NEELES, Assistant U.S. Attorney, for Claimant.

WILLIAM J. SCOTT, Attorney General (FRANCIS DONOVAN, Assistant Attorney General, of counsel), for Respondent.

PER CURIAM.

This cause comes before this Court on the following:

1. Complaint filed on July 14, 1978;
2. Joint stipulation by all parties;
3. Departmental reports from the Department of Mental Health and Developmental Disabilities dated August 4, 1978, December 15, 1978 and March 5, 1979.

The Claimant, United States of America, seeks to recover overpayments of monies on a child's insurance annuity paid out under Section 5(c) of the "Railroad Retirement Act" of 1937 (45 U.S.C. par. 228e(c), hereinafter referred to as the "Act"). The facts, as set forth

below, are not in dispute and have been stipulated to by all parties.

On or about August 24, 1967, David Edelson, the superintendent of the Dixon Developmental Center (hereinafter referred to as "Dixon"), a facility of the Department of Mental Health and Developmental Disabilities (hereinafter referred to as the "Department"), filed applications for benefits from the Railroad Retirement Board (hereinafter referred to as the "Board"), on behalf of Fred Pellegrino (hereinafter referred to as the "annuitant") for a child's insurance annuity under the Act (45 U.S.C. par. 228a *et seq.*). At the time of the filing and at all times thereafter relevant herein, the annuitant was a ward of the State of Illinois under the care and supervision of the Department.

Upon receipt of the applications and after determination of eligibility, the Board began paying a monthly annuity in 1968 to David Edelson as representative payee of the annuitant. It was the policy of the Department that where a ward of the State had no relative or other interested, competent individual to serve as representative payee, then the superintendent of the facility where the ward resided would be so designated. Such was the case here.

The Board continued paying monthly annuities to Edelson on behalf of the annuitant through April 30, 1976. However, under Sections 5(c), (j) and (1) of the Act, the marriage of an annuitant terminated his eligibility for further payments.

By applying for the benefits under the Act, the superintendent had a duty to notify the Board of the occurrence of several events, including the marriage of the annuitant. The superintendent was aware of this

responsibility since it was clearly spelled out on the applications submitted to the Board.

"APPLICANT'S AGREEMENT

* * *

III. *A child's insurance annuity ends with the month before the month* in which the child . . . (d) marries . . .

22. Do you agree to notify the Railroad Retirement Board promptly of the occurrence of any of the events described in I, II, and III above? *Yes." (Emphasis in original)*

On or about August 26, 1972, the annuitant unbeknownst to the superintendent married. The superintendent was unaware of this occurrence because the annuitant had been released from Dixon on a conditional discharge to a long-term care facility supervised by another administrative unit of the Department. It is noted that at the time the superintendent made the applications to the Board, the annuitant was then residing in a community placement facility in Sterling, Illinois. It appears that the superintendent at Dixon was named the representative payee for the annuitant because his discharge was conditional in that he required close supervision in the community and was still under the jurisdiction of Dixon at all times relevant to this case.

Despite this discharge from Dixon, however, the superintendent was still under a duty to keep track of the annuitant in order to be able to report to the Board any event which would have terminated his eligibility for his annuity. It is plain that this duty was breached and damages resulted.

On July 13, 1976, the annuitant, on his own initiative, contacted the Board informing it of his marriage.

Because of the lack of a timely notice of this event, the Board had made payments of the monthly annuity between August 1, 1972 and April 30, 1976 resulting in an overpayment of $8,980.20.

However, during this period, the Department, in its reports, indicated that the superintendent at Dixon had received only $8,751.12. Pursuant to departmental policy, $8,512.90 was forwarded by Dixon to the facility in Sterling for the use and benefit of the annuitant. The remaining $238.22 is currently being held in a Dixon Trust Fund Account for the annuitant who has since died.

Upon learning of the annuitant's marriage, the Board terminated payment of the benefits and requested a refund from the Department of the overpayment. After being advised that no payment would be forthcoming, a suit was filed in Federal Court for the Northern District of Illinois.

The filing of this lawsuit resulted in a compromise agreement between the Claimant, the Respondent and the Department that the Respondent would pay and the Claimant would accept $7,500.00 in full satisfaction of its action in the Federal action. The agreement further provided that the Claimant would file the instant action to recover that amount which the department would not oppose. The Federal action was dismissed with prejudice with leave to reinstate should the agreement not be honored.

Based on the facts presented to this Court, it appears that the Respondent is liable under a breach of contract theory. At all times relevant hereto, the superintendent at Dixon was acting within the scope of his employment with the Department. As such, his requesting benefits from the Board on behalf of the annuitant imposed duties upon him as an agent of the State of Illinois. These duties were clearly spelled out in the agreement he executed as an agent. There is no contention here that the superintendent was unaware of the responsibilities imposed by the agreement.

It is also noted in the record of this case that the Claimant and the Respondent have previously entered into a binding agreement based on valid consideration to compromise the amount of recovery in this case. While the Claimant, on the basis of the record herein, had a claim against the Respondent for an amount greater than presented in this case, this Court will not disturb prior agreements regarding possible claims against the State where good faith negotiations have resulted in a compromise settlement figure which thereafter becomes the amount sought in the Court of Claims.

The compromise settlement was worked out between the parties and agreed to by the Claimant and the responsible agency of the State; to-wit, the Department of Mental Health and Developmental Disabilities. At the time of the making of this agreement, all parties were represented by competent counsel; to-wit, the United States Attorney's Office and the Attorney General's Office of the State of Illinois. That both sides had authority to enter into such an agreement is admitted. This Court sees no abuse of discretion or authority nor any fraud inherent in the compromise settlement which is the basis of the instant claim.

This Court finds, therefore, that the Claimant, United States of America, is due the sum of $7,500.00 for overpayments of monies by an agent of the Claimant, the Railroad Retirement Board, to Respondent's agent, the Department of Mental Health and Developmental Disabilities, on a child's insurance annuity under the "Railroad Retirement Act" of 1937 (45 U.S.C. par. 228a *et seq.*)

The Claimant is hereby awarded the sum of $7,500.00 in full satisfaction of its claim herein.